a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| FILMON TEKLEWEINI-WELDEMICHAEL, Petitioner | CIVIL DOCKET NO. 1:20-CV-660-P |
| VERSUS | JUDGE DRELL |
| PAT BOOK, *ET. AL.*, Respondents | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and an accompanying "Complaint and Request for Injunction" (ECF No. 1-5) filed by Petitioner Filmon Tekleweini-Weldemichael ("Tekleweini-Weldemichael"). Tekleweini-Weldemichael is a detainee in the custody of the Department of Homeland Security ("DHS") and Bureau of Immigration and Customs Enforcement ("ICE"), detained at Catahoula Correctional Center ("CCC") in Harrisonburg, Louisiana.

Because Tekleweini-Weldemichael cannot establish entitlement to injunctive or habeas relief, his Petition (ECF No. 1) and corresponding request for a preliminary injunction (ECF No. 1-5) should be DENIED.

I.  **Background**

Tekleweini-Weldemichael is a native and citizen of Eritrea. ECF. No. 1-5 at 1. Tekleweini-Weldemichael was encountered at a Texas port of entry and claimed to have a reasonable fear of returning to Eritrea. ECF No. 19-1 at 2. It was determined that Tekleweini-Weldemichael was inadmissible, and he was processed for removal.

*See id.* Tekleweini-Weldemichael has remained in ICE custody since that date. *See id.*

According to ICE's records, on May 29, 2019, an Immigration Judge denied Tekleweini-Weldemichael's applications for asylum, withholding of removal, and relief under the Convention Against Torture, and ordered him removed to Eritrea. ECF No. 19-1 at 2. Tekleweini-Weldemichael did not appeal.

On August 14, 2019, Tekleweini-Weldemichael completed an application for a travel document from Eritrea. ECF No. 19-1 at 3. On February 7, 2020, Enforcement and Removal Operations ("ERO") received a travel document #M010607, with an expiration of December 19, 2020. ECF No. 19-1 at 3.

Tekleweini-Weldemichael's request for habeas and injunctive relief are both premised on the claims that he is being unlawfully detained by ICE; that he faces a general health risk due to the coronavirus pandemic; and, that he is not likely to be removed in the reasonably foreseeable future. ECF No. 1 at 4. Tekleweini-Weldemichael also asks that ICE be enjoined from removing him from CCC. ECF No. 1-5.

The undersigned set an expedited briefing schedule and held an evidentiary hearing (hereinafter, the "Hearing"). ECF Nos. 18, 20.

II. **Law and Analysis**

    A. **Preliminary Injunction**

Tekleweini-Weldemichael seeks a preliminary injunction, and ultimately habeas relief, ordering his release from custody and enjoining ICE from transferring

him from CCC. For a preliminary injunction to be granted, a Petitioner must show: (1) a substantial likelihood that he will prevail on the merits; (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted; (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin; and (4) that granting the preliminary injunction will not disserve the public interest. *See Bhatia v. Warden*, 1:16-CV-1125, 2017 WL 1026054, at *1 (W.D. La. Jan. 24, 2017), *report and recommendation adopted*, 2017 WL 1017634 (W.D. La. Mar. 15, 2017) (citing *Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005)).

A preliminary injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries a burden of persuasion." *Black Fire Fighters Ass'n of Dallas v. City of Dallas, Tex.*, 905 F.2d 63, 65 (5th Cir. 1990). "The denial of a preliminary injunction will be upheld where the movant has failed sufficiently to establish any one of the four criteria." *Black Fire Fighters Ass'n*, 905 F.2d at 65.

### 1. Tekleweini-Weldemichael cannot show irreparable injury regarding his transfer.

Tekleweini-Weldemichael asks that ICE be enjoined from transferring him to another facility. ECF No. 1-5. Tekleweini-Weldemichael concludes that a transfer to another detention facility "would cause irreparable harm to him as he would be restricted from accessing justice. . . ." ECF No. 1-5 at 3.

Claims regarding prison transfers are generally not cognizable under § 2241. *See Greenhill v. Menifee*, 202 F. App'x 799, 800 (5th Cir. 2006) (claim not cognizable

3

under § 2241 because prisoners lack a constitutionally protected interest in where they are incarcerated); *Zapata v. United States*, 264 F. App'x 242, 243-44 (3d Cir. 2008) (district court lacked jurisdiction over a § 2241 petition that challenged a transfer). There is no protected liberty interest in being housed in a particular facility. *Armendariz-Mata v. Lappin*, 157 F. App'x 767 (5th Cir. 2005) (citing *Yates v. Stalder*, 217 F.3d 332, 334 (5th Cir. 2000)).

Also, Tekleweini-Weldemichael's physical presence in this district is not required for the adjudication of his Petition. Jurisdiction attaches upon filing a habeas petition, and it is not destroyed upon the subsequent transfer or custodial change of the petitioner. *See McClure v. Hopper*, 577 F.2d 938, 939-40 (5th Cir. 1978), *cert. denied*, 439 U.S. 1077 (1979). Therefore, the transfer of Tekleweini-Weldemichael out of CCC or the Western District of Louisiana would not affect the Court's jurisdiction over Tekleweini-Weldemichael's habeas claim.

### 2. Tekleweini-Weldemichael is not likely to succeed on the merits of his habeas claim.

Tekleweini-Weldemichael is a civil detainee. As a result, his detention must remain "nonpunitive in purpose and effect." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Civil immigration detainees are specifically entitled to the protections of the Fifth Amendment to the United States Constitution. Its Due Process Clause, in relevant part, forbids the government to "depriv[e]" any "person . . . of . . . liberty . . . without due process of law." Civil detention thus implicates the Due Process Clause: "Freedom from imprisonment—from government custody, detention, or other forms

4

of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See id.* at 693.

The Supreme Court has long held that civil detention must be justified: "[G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and 'narrow' nonpunitive 'circumstances,' where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (internal citations and quotations omitted). Civil detention becomes unconstitutional when "punitive" in nature, meaning "not [or no longer] reasonably related to a legitimate, nonpunitive governmental objective." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir. 1997).

    a.    <u>Tekleweini-Weldemichael cannot succeed based on COVID-19.</u>

Tekleweini-Weldemichael may succeed on his substantive due process claim by establishing that his detention does not reasonably relate to a legitimate governmental purpose. He may make this showing, for example, by proving that, due to his age, immune deficiencies, or other comorbidities, he faces an elevated risk of contracting COVID-19 or suffering serious illness from it; that his particular circumstances also heighten the risk; and that preventive measures are difficult or impossible, leaving him unduly exposed to contracting the virus. *See Vazquez Barrera*, 2020 WL 1904497, at *5 ("Here, the Court finds that detention of Plaintiffs,

who are at high risk of serious illness or death if they contract COVID-19, in MPC, where social distancing and proper hygiene are impossible, does not reasonably relate to a legitimate governmental purpose.").

The Court recognizes, and remains greatly concerned by, the risk to all prisoners and detainees posed by COVID-19. But a petitioner's claims must be distinct in some respect. *See Martinez Franco v. Jennings*, No. 20-CV-02474-CRB, 2020 WL 1976423, at *3 (N.D. Cal. Apr. 24, 2020) ("Franco does not identify, and the Court has not seen, a case finding that increased likelihood of contracting the virus rendered unconstitutional the detention of a person without underlying medical conditions or some other vulnerability."). The Fifth Circuit has explained that "[t]he 'incidence of diseases or infections, standing alone,' do not 'imply unconstitutional confinement conditions, since any densely populated residence may be subject to outbreaks.'" *Valentine v. Collier*, No. 20-20207, 2020 WL 1934431, at *3 (5th Cir. Apr. 22, 2020) (quoting *Shepherd v. Dallas Cty.*, 591 F.3d 445, 454 (5th Cir. 2009)). This Court has already concluded the same: "[P]risoners are not entitled to release or transfer based solely on generalized COVID-19 fears and speculation." *Riggs v. Louisiana*, No. CV 3:20- 0495, 2020 WL 1939168, at *2 (W.D. La. Apr. 22, 2020).[1] Otherwise, the claims of any prisoner or detainee would be equally meritorious – or

---

[1] And so have many others. *See, e.g., United States v. Clark*, No. CR 17-85-SDD-RLB, 2020 WL 1557397, at *4 (M.D. La. Apr. 1, 2020) ("Defendant cites no authority for the proposition that the fear of contracting a communicable disease warrants a sentence modification."); *Saillant v. Hoover, et al.*, No. 1:20-CV-00609, 2020 WL 1891854, at *5 (M.D. Pa. Apr. 16, 2020) (denying habeas relief in part because the petitioner sought habeas corpus relief merely because he was "detained and subjected to a generalized risk of contracting COVID-19").

equally meritless – notwithstanding their individual situations. That result would be untenable.

To separate meritorious claims from generalized risk, some courts have focused upon underlying detainees' medical conditions, detainees' criminal histories or tendency toward violence, and the detention facility's response to the pandemic. *See Vazquez Barrera*, 2020 WL 1904497, at *6. Other courts have created non-exhaustive lists of factors that may be considered in determining whether to grant habeas relief based on COVID-19 concerns. *See Saillant*, 2020 WL 1891854, at *4; *Vazquez Barrera*, 2020 WL 1904497, at *6. This Court recently compiled a number of factors in determining whether to grant habeas release to ICE detainees. *See Dada, et al. v. Witte, et al.*, 1:20-CV-458, ECF No. 17 at 22-23.[2]

Tekleweini-Weldemichael has not been diagnosed with COVID-19, and he is not experiencing any symptoms of the virus. He does not allege that he has been directly exposed to the virus. He does not allege that his age places him at higher

---

[2] Specifically, the Court considered:
(1) whether the petitioner has been diagnosed with COVID-19 or is experiencing symptoms consistent with the disease;
(2) whether the petitioner is among the group of individuals that is at higher risk of contracting COVID-19 as identified by the CDC, due to the petitioner's age or an underlying health condition;
(3) whether the petitioner has been, or has likely been, directly exposed to COVID-19;
(4) the physical space in which the petitioner is detained, and how that physical space affects his risk of contracting COVID-19;
(5) the efforts that detention facility officials have made to prevent or mitigate the spread of, or harm caused by, COVID-19;
(6) any danger to the community, or to the petitioner's immigration proceedings, that may be posed by the petitioner's release; and
(7) any other relevant factors.

*See id.*

risk. Nor does he allege that he has any underlying medical conditions that might place him at higher risk. In fact, at the Hearing, counsel for Tekleweini-Weldemichael confirmed that Tekleweini-Weldemichael was not "high risk."

Additionally, although Tekleweini-Weldemichael alleges that other detainees at CCC have contracted COVID-19, he does not allege that Respondents' efforts to prevent or mitigate the spread of, or harm caused by, COVID-19, have been subpar.

Thus, Tekleweini-Weldemichael cannot show that his detention is unconstitutional due to COVID-19 concerns.

b. <u>Tekleweini-Weldemichael cannot succeed under *Zadvydas*.</u>

Tekleweini-Weldemichael alleges a violation of his due process right against indefinite detention under 8 U.S.C. § 1231(a)(6) and *Zadvydas*.

Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. *See* 8 U.S.C. § 1231(a)(1)(A). During the "removal period," the alien must be detained. *See id.* § 1231(a)(2). After the expiration of the removal period, the government may continue to detain the alien or release him subject to conditions of release. *Id.* § 1231(a)(6). An alien who is detained under § 1231(a)(6) may be detained only for "a period reasonably necessary to bring about that alien's removal from the United States" and may not be detained indefinitely. *Zadvydas*, 533 U.S. at 689; *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (applying *Zadvydas* to all categories of removal aliens, including inadmissible aliens under orders of removal). In order to facilitate "uniform administration in the federal courts," the Supreme Court recognized a six-

month "presumptively reasonable period of detention," which the Fifth Circuit subsequently interpreted as commencing from the start of the "removal period." *Zadvydas*, 533 U.S. at 701.

Tekleweini-Weldemichael claims he has been in continuous federal custody since May 19, 2018, and has remained in custody for over six months since his removal order became final on May 29, 2019. ECF No. 19-1 at 2. But the expiration of the six-month presumptive period does not necessarily entitle Petitioner to habeas relief.

After this six-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the "reasonably foreseeable future" conversely would have to narrow. *Zadvydas*, 533 U.S. at 701. This six-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future. *See id; see also Saeku v. Johnson*, No. 1:16-CV-155, 2017 WL 4075058, at *3 (N.D. Tex. Sept. 14, 2017) (after establishing post-removal order custody exceeding six months, "the alien must provide a good reason to believe that there is no significant likelihood of removal in the foreseeable future.") (citing *Apau v. Ashcroft*, No. 3:02-CV-2652, 2003 WL 21801154, at *2 (N.D. Tex. June 17, 2003)).

9

### i. There is a significant likelihood of removal.

To carry his burden under *Zadvydas*, Tekleweini-Weldemichael "must demonstrate that 'the circumstances of his status,' or the existence of 'particular individual barriers to his repatriation' to his country of origin are such that there is no significant likelihood of removal in the reasonably foreseeable future." *Shah v. Wolf*, 3:20-CV-994, 2020 WL 4456530, at *2–4 (N.D. Tex. July 13, 2020), *report and recommendation adopted*, 2020 WL 4437484 (N.D. Tex. Aug. 3, 2020) (quoting *Idowu v. Ridge*, No. 3:03-CV-1293-R, 2003 WL 21805198, at *4 (N.D. Tex. Aug. 4, 2003); *Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1366 (N.D. Ga. 2002)). "Speculation and conjecture are not sufficient to carry this burden; nor is a 'lack of visible progress' in his removal sufficient in and of itself to show no significant likelihood of removal in the reasonably foreseeable future." *Id.* (citation and internal quotation marks omitted).

At the Hearing, counsel for Tekleweini-Weldemichael argued that there is no significant likelihood of his removal in the reasonably foreseeable future because Eritrea's borders are "closed." On the other hand, the Government maintains that a travel document (#M010607) was issued on February 7, 2020, and it does not expire until December 19, 2020. ECF No. 19-1 at 3. There is no evidence that the travel document is invalid or unenforceable. Neither "speculation" nor "conjecture" regarding the executability of the travel document can suffice under *Zadvydas*. *See Shah*, 2020 WL 4456530, at *3 (citing *Idowu*, 2003 WL 21805198, at *4). The "lack of visible progress" in executing the travel document "simply shows that the

10

bureaucratic gears of the [ICE] are slowly grinding away." *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1137 (S.D. Cal. 2001); *see also Idowu*, 2003 WL 21805198, at *4 ("Speculation and conjecture as to reasons for governmental inaction do not suffice to carry the petitioner's burden."). Absent clarifying circumstances or clear evidence, this principle must remain controlling, even in these extraordinary times.

Tekleweini-Weldemichael does not present a basis for finding there is no significant likelihood of removal in the reasonably foreseeable future. *See Shah*, 2020 WL 4456530, at *3 ("Aside from this circumstance of Pakistan's suspension of international travel [due to COVID-19], which affects all Pakistani nationals abroad at the time enforcement of the suspension began, Petitioner has not identified any impediments to his removal once the travel restrictions are loosened or lifted."). And, to the extent Tekleweini-Weldemichael claims that his lack of convictions for violent crimes supports habeas relief under § 1231(a)(6) and *Zadvydas*, the Supreme Court recognized in *Clark* that the ruling of *Zadvydas* applies to all categories of aliens subject to § 1231(a)(6), including inadmissible aliens such as Tekleweini-Weldemichael. *See Clark*, 543 U.S. at 386.

    ii. <u>There is sufficient rebuttal evidence.</u>

Even assuming that Tekleweini-Weldemichael could demonstrate that there is no significant likelihood of his removal in the foreseeable future, his claim under *Zadvydas* would still fail. The travel document is reportedly valid until the end of this year, and ICE indicates that Tekleweini-Weldemichael will be removed on the next available charter flight to Eritrea. ECF No. 19-1 at 3. Assuming Tekleweini-

11

Weldemichael proffered a "good reason" to believe his removal was unlikely, the travel document and ICE's official proclamation would be sufficient for rebuttal. *See Shah*, 2020 WL 4456530, at *4; *Ramirez v. Searls*, No. 20-CV-6018, 2020 WL 2748203, at *3 (W.D.N.Y. May 27, 2020) (finding the Government rebutted "good reason" under *Zadvydas* where the Government obtained travel documents in March and indicated it planned to remove petitioner to Venezuela in June 2020, "provided that it can do so consistent with any Covid-19 travel restrictions."); *Jaime F. v. Barr*, No. 19-20706, 2020 WL 2316437, at *5 (D.N.J. May 11, 2020) ("There are no impediments to prevent Petitioner's removal as soon as the national quarantine in Venezuela ends, and . . . Petitioner has pointed to no evidence to suggest otherwise."); *Francis S.M. v. Decker*, No. 19-8053, 2020 WL 1956053, at *4 (D.N.J. Apr. 23, 2020) (denying habeas relief under *Zadvydas* despite flight restrictions to India given ICE's stated intent to schedule Petitioner for earliest available flight to India); *see also Ahmad v. United States Attorney Gen.*, 1:17-CV-359, 2017 WL 4271704, at *4 (S.D. Ohio Aug. 29, 2017), *report and recommendation adopted*, 2017 WL 4250526 (S.D. Ohio Sept. 22, 2017) (assuming petitioner's expressed uncertainty as to his eligibility for a Pakistani passport was sufficient to show good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the respondent's evidence of on-going efforts to obtain petitioner's travel documents is sufficient to rebut that showing); *Head v. Keisler*, 07-CIV-402, 2007 WL 4208709, at *4 (W.D. Okla. Nov. 26, 2007) (even if petitioner's assertion was sufficient to meet his initial burden under *Zadvydas*, the respondents rebutted that showing with evidence that the issuance of

"a travel document in the reasonabl[y] foreseeable future [was] not foreclosed"); *Patel v. Sessions*, 2:18-CV-1325, 2019 WL 1119997, at *2 (W.D. La. Feb. 15, 2019), *report and recommendation adopted*, 2019 WL 1120036 (W.D. La. Mar. 11, 2019) (the fact that travel documents were previously issued prevents the court from crediting the petitioner's conclusory allegation that that his removal is not likely to occur in the foreseeable future).

Tekleweini-Weldemichael is not entitled to habeas relief on his *Zadvydas* claim, so it should be dismissed without prejudice. The denial of his *Zadvydas* claim should not preclude him from filing a new § 2241 petition if his travel document is cancelled or expires, or if he obtains new information about the executability of the travel document or about the Government's ability to remove him due to the COVID-19 pandemic.

### III. Conclusion

Because Tekleweini-Weldemichael cannot show that he is entitled to a preliminary injunction regarding his transfer or entitled to relief under *Zadvydas*, IT IS RECOMMENDED that the Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241 (ECF No. 1) and accompanying "Complaint and Request for Injunction" (ECF No. 1-5) filed by Tekleweini-Weldemichael be DENIED and DISMISSED, without prejudice to re-filing should his circumstances change.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), any party may serve and file with the Clerk of Court written objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof,

unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections or reply briefs) may be filed, unless a party shows good cause and obtains leave of court. The District Judge will consider timely objections before issuing a final ruling.

A party's failure to file written objections to the proposed factual findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days after being served with a copy thereof, or within any extension of time granted by the Court under Fed.R.Civ.P. 6(b), shall bar that party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

SIGNED on Wednesday, September 9, 2020.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE